## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## C.A. No. 5:13-cv-307

| | | |
|---|---|---|
| SYLVESTER HILLIARD, JR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, | ) | **JURY TRIAL DEMANDED** |
| LLC; SESSOMS & ROGERS, P.A.; GE | ) | |
| CAPITAL RETAIL BANK; EQUIFAX | ) | |
| INFORMATION SERVICES, LLC; | ) | |
| EXPERIAN INFORMATION SOLUTIONS, | ) | |
| INC.; and TRANS UNION, LLC, | ) | |
| Defendants. | ) | |
| _____ | ) | |

NOW COMES Plaintiff SYLVESTER HILLIARD, JR., by and through counsel, and makes this Complaint against Defendants, PORTFOLIO RECOVERY ASSOCIATES, LLC; SESSOMS & ROGERS, P.A.; GE CAPITAL RETAIL BANK; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and TRANS UNION, LLC, alleging and saying as follows:

### INTRODUCTION:

This is an action for damages brought by an individual consumer for violations by Defendants PORTFOLIO RECOVERY ASSOCIATES, LLC ("PORTFOLIO") and SESSOMS & ROGERS, P.A. ("SESSOMS") of the Fair Debt Collections Practices Act (hereinafter "FDCPA"), 15 U.S.C. §§ 1692, *et seq*., which prohibits debt collectors from engaging in abusive, deceptive and unfair practices. Plaintiff alleges hereinafter that these Defendants attempted to collect from him money that he did not owe on a credit

1

card account that had belonged to his deceased parents. Plaintiff also alleges that the same actions constitute violations by PORTFOLIO of North Carolina's Prohibited Practices by Collection Agencies statute ("PPCA") at N.C.G.S. § 50-70-90, et seq.

When it enacted the FDCPA, Congress found extensive evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors. Two of Congress' stated purposes in enacting the FDCPA were to eliminate abusive and deceptive debt collection practices and to ensure that those debt Collectors who refrain from abusive practices are not competitively disadvantaged. U.S. v. National Financial Services, Inc., 98 F.3d 131, 135 (4th Cir. 1996). The FDCPA specifically prohibits attempts to collect amounts not due. 15 U.S.C. § 1692f(1).

Plaintiff also alleges that Defendant PORTFOLIO, as well as Defendants GE CAPITAL RETAIL BANK ("GECRB"), EQUIFAX INFORMATION SERVICES, LLC ("EQUIFAX"), EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN") and TRANS UNION, LLC ("TRANS UNION") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., in illegally and incorrectly reporting the same account of his deceased parents on his credit reports, despite his disputes and requests that they delete it.

## JURISDICTION

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a) and pursuant to 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, and North Carolina law.

2.      Venue is proper in this District because a substantial part of the events or

omissions giving rise to the claim occurred here.

3.     This case is brought within one year of the FDCPA violations in compliance with the statute of limitations at 15 U.S.C. § 1692k(d), within two years of the FCRA violations in compliance with the statute of limitations at 15 U.S.C. § 1681p, and within four years of the PPCA violations, in compliance with the statute of limitations at N.C.G.S. § 75-16.2.

## PARTIES

### Plaintiff Sylvester Hilliard, Jr.

4.     Plaintiff SYLVESTER HILLIARD, JR. ("Mr. Hilliard")  is a natural person residing in Wake County, North Carolina.

5.     Mr. Hilliard is a "consumer" and/or a person affected by a violation of the FDCPA under 15 U.S.C. §§ 1692a(3) and 1692k .

6.     Mr. Hilliard is also a "consumer" as defined by FCRA at 16 U.S.C. § 1681a(c).

7.     Mr. Hilliard is also a "consumer" as defined by the PPCA at N.C.G.S. § 58-70-90(2).

### Defendant Portfolio Recovery Associates, LLC.

8.     Defendant PORTFOLIO RECOVERY ASSOCIATES, LLC ("PORTFOLIO") is a Delaware limited liability company with a principal place of business at 140 Corporate Boulevard, Newport News, Virginia and a registered agent, National Registered Agents, Inc., at 150 Fayetteville Street, Box 1011, Raleigh, NC 27601.

9.     Upon information and belief, based on a review of PORTFOLIO's corporate website and its filings with the U.S. Securities and Exchange Commission, PORTFOLIO is in the business of purchasing delinquent or charged-off consumer debts, which it then seeks to collect.

10.     PORTFOLIO is collects such delinquent or charged-off consumer debts from North Carolina consumers by telephone, by mail, and through litigation in the courts.

11.     PORTFOLIO holds a collection agency license issued by the Department of Insurance of the State of North Carolina.

12.     PORTFOLIO was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

13.     With respect to PORTFOLIO, the alleged debt in this matter is a "debt" as that term is defined by the FDCPA at 15 U.S.C. § 1692a(5).

14.     PORTFOLIO was and is a "collection agency" as defined by the PPCA at N.C.G.S. § 58-70-15(b) and 58-70-90(1).

15.     With respect to PORTFOLIO, the alleged debt in this matter is a "debt" as that term is defined by the PPCA at N.C.G.S. § 58-70-90(3).

16.     At all times relevant to this Complaint, PORTFOLIO was engaged in commerce in the State of North Carolina.

**Defendant Sessoms & Rogers, P.A.**

17.     Defendant SESSOMS & ROGERS, P.A ("SESSOMS") is a North Carolina professional association with a principal place of business at 1822 East Highway 54,

Suite 200, Durham, NC 27709, and a registered agent, Lee Rogers, at the same address.

18.     SESSOMS is a debt collection law firm that regularly collects consumer debts in the courts of North Carolina.

19.     SESSOMS was PORTFOLIO'S attorney and acted as its agent in the collection of the account at issue.

20.     As a law firm that regularly collect debts, SESSOMS was and is a "debt collector" as defined by the FDCPA at 15 U.S.C. § 1692a(6) and clarified in Heintz v. Jenkins, 514 U.S. 291, 115 S.Ct. 1489 (1995).

21.     With respect to SESSOMS, the alleged debt in this matter is a "debt" as that term is defined by the FDCPA at 15 U.S.C. § 1692a(5).

**Defendant GE Capital Retail Bank.**

22.     Defendant GE CAPITAL RETAIL BANK ("G.E.") is a federal savings association with a principal place of business at 170 West Election Road, Suite 125, Draper, UT 84020.

23.     GECRB runs private-label credit card programs for various merchants nationwide, including department store chain Belk, Inc.

**Defendant Experian Information Solutions, Inc.**

24.     Defendant EXPERIAN INFORMATION SOLUTIONS, INC., ("EXPERIAN") is an Ohio corporation with a principal place of business at 475 Anton Blvd., Costa Mesa, California 92626, and a registered agent, CT Corporation System, at 150 Fayetteville St., Box 1011, Raleigh, North Carolina 27601.

25.     EXPERIAN is a "consumer reporting agency" as defined by 15 U.S.C. §

1681(f).

26.     EXPERIAN is regularly engaged in the business of assembling, evaluating, and distributing information concerning consumers for the purpose of furnishing consumer reports, as defined by15 U.S.C. § 1681(d), for third parties.

27.     Third parties pay EXPERIAN in return for the receipt of such consumer reports.

## Defendant Equifax Information Services, LLC.

28.     Defendant EQUIFAX INFORMATION SERVICES, LLC., ("EQUIFAX") is an is a Georgia corporation with a principal place of business at 1550 Peachtree Street, NW, Atlanta, Georgia 30309, and a registered agent, Corporation Service Company, at 327 Hillsborough Street, Raleigh, North Carolina  27603.

29.     EQUIFAX is a "consumer reporting agency" as defined by 15 U.S.C. § 1681(f).

30.     EQUIFAX is regularly engaged in the business of assembling, evaluating, and distributing information concerning consumers for the purpose of furnishing consumer reports, as defined by15 U.S.C. § 1681(d), for third parties.

31.     Third parties pay EQUIFAX in return for the receipt of such consumer reports.

## Defendant Trans Union, LLC.

32.     Defendant TRANS UNION, LLC ("TRANS UNION") is a is a Delaware limited liability company with a principal place of business at 555 W. Adams, Chicago, IL 60661, and a registered agent, The Prentice-Hall Corporation System, Inc., at 327

Hillsborough St., Raleigh, North Carolina 27603.

33.     TRANS UNION is a "consumer reporting agency" as defined by 15 U.S.C.
§ 1681(f).

34.     TRANS UNION is regularly engaged in the business of assembling,
evaluating, and distributing information concerning consumers for the purpose of
furnishing consumer reports, as defined by 15 U.S.C. § 1681(d), for third parties.

35.     Third parties pay TRANS UNION in return for the receipt of such
consumer reports.

## FACTUAL ALLEGATIONS

### The Origins of the Belk Account

36.     Sometime in the 1970's, Sylvester Hilliard, Sr., and his wife, Katie Hilliard,
open a credit line ("the Belk Account") with the department store that today operates as
Belk, Inc.

37.     Sylvester Hilliard, Sr. and Katie Hilliard were the parents of Plaintiff
herein.

38.     Sylvester Hilliard, Sr. died in 1978.

39.     After his death, his widow continued to maintain and use the Belk Account,
up through her own death in 2005.

40.     After his mother's death, Plaintiff Sylvester Hilliard, Jr., as an executor of
her estate, took steps to pay all of her open accounts, including the Belk Account, and to
notify her creditors that the accounts should be closed due to her death.

## Initial Collection on the Belk Account

41.     Some years after Katie Hilliard's death, Mr. Hilliard noticed that an account that was not his was listed on his credit report.

42.     The creditor for the account was listed as "GEMB/Belk."

43.     Upon information and belief, based on a review of Belk's website, "GEMB" stands for GE Money Bank.

44.     Mr. Hilliard called the creditor to tell it that the account was not his.

45.     Mr. Hilliard told the creditor that he thought that the account may have belonged to his deceased parents and that it had already been closed.

46.     He thought that the whole thing was a mistake and that that would be the end of the matter.

47.     Later, however, Mr. Hilliard began receiving collection calls and letters from Defendant PORTFOLIO about the same Belk Account.

48.     He told the collection agents who called that this was not his account.

49.     Since the Belk Account was not his account, he was annoyed by the collection activity, but did not think that he faced any legal liability.

50.     Plaintiff has since learned that his sister-in-law, Wanda Hilliard, had somehow obtained and used Katie Hilliard's Belk credit card after Katie Hilliard's death, and had eventually stopped paying for the charges incurred.

51.     During the time that his sister-in-law was using his deceased mother's Belk card, Plaintiff was unaware of her activities and had no knowledge that the account was open or in use.

**The Portfolio Lawsuit**

52.     On or about April 24, 2012, PORTFOLIO, by and through its agent, SESSOMS, filed a debt collection lawsuit against Mr. Hilliard regarding the Belk Account.

53.     Attached to PORTFOLIO's lawsuit complaint were two purported statements for the alleged account.

54.     Both of the purported account statements contained the Belk Department Store logo and referred to "your Belk Card."

55.     The account number on the purported account statements attached to PORTFOLIO's lawsuit complaint against Mr. Hilliard appeared to match that of the Belk Account that Mr. Hilliard had earlier disputed on his credit report.

56.     In its lawsuit complaint, PORTFOLIO alleged that Mr. Hilliard had opened the Belk Account and defaulted on payments.

57.     In its lawsuit complaint, PORTFOLIO further alleged that the original creditor, purportedly "GE Money Bank," had charged off the defaulted account and that PORTFOLIO had then purchased the charged-off account.

58.     In its lawsuit complaint, PORTFOLIO further alleged that Mr. Hilliard was "lawfully indebted" to PORTFOLIO in the amount of $7,202.04, plus interest at a rate of eight percent (8%) per annum from January 1, 2010.

59.     In its lawsuit complaint, PORTFOLIO demanded a judgment against Mr. Hilliard in the amount of $7,202.04, plus interest at a rate of eight percent (8%) per annum from January 1, 2010, plus costs.

9

60.     PORTFOLIO's representations in the lawsuit complaint were false.

61.     Mr. Hilliard had not opened or used the Belk Account.

62.     The Belk Account was not an account or his.

63.     Mr. Hilliard did not owe PORTFOLIO or its alleged predecessor any money or any interest or any costs on the Belk Account.

64.     One of the purported account statements included with PORTFOLIO's lawsuit complaint listed the addressee as "Katie R Hilliard."

65.     The other of the purported account statements listed the addressee as "Sylvester Hilliard."

66.     The purported account statements listed as the mailing address for "Katie R Hilliard" and "Sylvester Hilliard" as 2505 Albemarle Avenue in Raleigh, North Carolina, a location where neither Mr. Hilliard nor his deceased parents had ever lived or received mail.

67.     The mailing address was that of Mr. Hilliard's brother and sister-in-law, Bernard and Wanda Hilliard.

68.     Although the purported account statements listed 2505 Albemarle Avenue in Raleigh, North Carolina as the cardholders' address, PORTFOLIO and SESSOMS did not attempt to serve the lawsuit on Mr. Hilliard at that address.

69.     Rather, Defendants served the lawsuit on Mr. Hilliard at his home address on Hazelnut Drive in Raleigh, where he has resided since 1970.

70.     Despite Mr. Hilliard's having informed Defendant PORTFOLIO that the Belk Account was not his, and despite his home address of more than forty years not

matching the address on the purported statements for the account, PORTFOLIO and its attorneys sued him over the account anyway.

71.    Mr. Hilliard had to hire an attorney to assist him in getting PORTFOLIO's lawsuit dismissed.

72.    His attorney filed a motion to dismiss, an answer, and counterclaims, and served discovery requests on Mr. Hilliard's behalf.

73.    On or about September 18, 2012, PORTFOLIO voluntarily dismissed the lawsuit against Mr. Hilliard with prejudice.

74.    Mr. Hilliard, however, did not dismiss his own counterclaims to the lawsuit, so his counterclaims remained pending, and he remained represented by counsel with respect to PORTFOLIO.

### Credit Reporting Concerns

75.    Although the lawsuit was dismissed, Mr. Hilliard was still concerned because he had found that the Belk Account was appearing multiple times on all of his credit reports.

76.    As of July 19, 2012, Defendants PORTFOLIO and GECRB were both reporting the Belk Account on Mr. Hilliard's EQUIFAX credit report as if it was an account for which he was liable.

77.    Upon information and belief, based on a review of Belk's website, GECRB is the current issuer of Belk credit cards.

78.    In fact, as of July 19, 2012, GECRB had placed three separate Belk entries on Mr. Hilliard's EQUIFAX credit report, all of which appeared to him to reference the

11

same account.

79.     As of July 30, 2012, Defendants PORTFOLIO and GECRB were both reporting the Belk Account on Mr. Hilliard's TRANS UNION credit report as if it was an account for which he was liable.

80.     Upon information and belief, based on the same credit report, Defendant PORTFOLIO had also obtained Mr. Hilliard's TRANS UNION credit report during 2011 and 2012, although Mr. Hilliard did not have any accounts with PORTFOLIO.

81.     Mr. Hilliard had not given PORTFOLIO permission to access his TRANS UNION credit report.

82.     As of August 4, 2012, Defendants PORTFOLIO and GECRB were both reporting the Belk Account on Mr. Hilliard's EQUIFAX credit report as if it was an account for which he was liable.

83.     On each of the credit reports, GECRB noted that Mr. Hilliard had previously disputed the Belk Account.

84.     Additionally, as of the same dates, all three credit reporting agencies incorrectly listed 2505 Albemarle Avenue in Raleigh as an address of Mr. Hilliard's.

85.     Subsequent to the lawsuit dismissal, Mr. Hilliard disputed the Belk Account in writing with Defendants EXPERIAN, EQUIFAX, and TRANS UNION using the process set forth in the Fair Credit Reporting Act.

86.     In each dispute to each Defendant credit reporting agency, Mr. Hilliard indicated that the Belk Account belonged to his deceased parents and that PORTFOLIO had dismissed a lawsuit against him over the Belk Account with prejudice.

87.     In each dispute to each Defendant credit reporting agency, Mr. Hilliard requested that the credit reporting agency verify and correct the false representations of PORTFOLIO and GECRB in his credit file.

88.     In each dispute to each Defendant credit reporting agency, he stated that the Albemarle Avenue address on his credit reports was not his address.

89.     Mr. Hilliard provided documentation to the credit reporting agencies with each dispute.

## Experian's Dispute Response

90.     Upon information and belief, based on communications with EXPERIAN, after receiving Plaintiff's dispute, the credit reporting agency asked PORTFOLIO and GECRB to re-investigate the status of the Belk Account.

91.     On or about January 28, 2013, EXPERIAN responded to Mr. Hilliard's dispute.

92.     EXPERIAN deleted one of the three GECRB credit report entries for the Belk Account and the Albemarle Avenue address from Mr. Hilliard's credit report.

93.     With respect to the remaining credit report entries of GECRB for the Belk Account, however, EXPERIAN left them on Mr. Hilliard's credit report with a status of "No status."

94.     GECRB's representations about the Belk Account in the TRANS UNION report were false with respect to Mr. Hilliard, in that GECRB was still listed the Belk Account twice by on the credit report of a person who was not liable for the account of his deceased parents.

95.     EXPERIAN did not delete the PORTFOLIO credit report entry for the Belk Account, either.

96.     Rather, as of January 28, 2013, PORTFOLIO was reporting the Belk Account on the EXPERIAN credit report as a "collection" account with a past due balance of $8,332.00.

97.     PORTFOLIO's representations about the Belk Account in the EXPERIAN report were false with respect to Mr. Hilliard, who was not liable for the account of his deceased parents.

98.     Upon Mr. Hilliard's request for verification and correction of the PORTFOLIO and GECRB entries, and in accordance with its standard procedures, EXPERIAN did not evaluate or consider Mr. Hilliard's information, claims, or evidence, nor did it make any attempt to substantially or reasonably verify PORTFOLIO's and GECRB's representations.

99.     This is particularly obvious in that EXPERIAN deleted one GECRB entry, while verifying the PORTFOLIO entry and the other GECRB entries, all of which were entries for the exact same Belk Account.

100.    In the alternative to the allegation that EXPERIAN failed to contact PORTFOLIO and GECRB, it is alleged that EXPERIAN did forward some notice of the disputes to PORTFOLIO and GECRB and that PORTFOLIO and GECRB failed to conduct lawful investigations.

### Trans Union's Dispute Response

101.    Upon information and belief, based on communications with TRANS

UNION, after receiving Plaintiff's dispute, the credit reporting agency asked

PORTFOLIO and GECRB to re-investigate the status of the Belk Account.

102.    On or about January 31, 2013, TRANS UNION responded to Mr. Hilliard's

dispute.

103.    TRANS UNION deleted the Albemarle Avenue address from Mr. Hilliard's

credit report.

104.    TRANS UNION did not, however, delete the credit report entries of

GECRB or PORTFOLIO for the Belk Account.

105.    As of January 31, 2013, GECRB was reporting the Belk Account on the

TRANS UNION credit report as a "charge-off" account for which GECRB had

supposedly charged off a delinquent balance of $7,202.00.

106.    GECRB's representations about the Belk Account in the TRANS UNION

report were false with respect to Mr. Hilliard, who was not liable for the account of his

deceased parents.

107.    As of January 31, 2013, PORTFOLIO was reporting the Belk Account on

the TRANS UNION credit report as an "open" account that was "in collection" with a

past due balance of $8,335.00.

108.    PORTFOLIO's representations about the Belk Account in the TRANS

UNION report were false with respect to Mr. Hilliard, who was not liable for the account

of his deceased parents.

109.    Upon Mr. Hilliard's request for verification and correction of the

PORTFOLIO and GECRB entries, and in accordance with its standard procedures,

TRANS UNION did not evaluate or consider Mr. Hilliard's information, claims, or evidence, nor did it make any attempt to substantially or reasonably verify PORTFOLIO's and GECRB's representations.

110. In the alternative to the allegation that TRANS UNION failed to contact PORTFOLIO and GECRB, it is alleged that TRANS UNION did forward some notice of the disputes to PORTFOLIO and GECRB and that PORTFOLIO and GECRB failed to conduct lawful investigations.

## Equifax's Dispute Response

111. Upon information and belief, based on communications with EQUIFAX, after receiving Plaintiff's dispute, the credit reporting agency asked PORTFOLIO and GECRB to re-investigate the status of the Belk Acount.

112. On or about February 1, 2013, EQUIFAX responded to Mr. Hilliard's dispute.

113. EQUIFAX deleted the GECRB credit report entry for the Belk Account and the Albemarle Avenue address from Mr. Hilliard's credit report.

114. With respect to the credit report entry of PORTFOLIO for the Belk Account, however, EQUIFAX wrote to Mr. Hilliard, "We verified that this item belongs to you."

115. As of February 1, 2013, PORTFOLIO was reporting the Belk Account on the EQUIFAX credit report as an "open" account with a past due balance of $8,334.00.

116. PORTFOLIO's representations about the Belk Account in the EQUIFAX report were false with respect to Mr. Hilliard, who was not liable for the account of his

deceased parents.

117. Upon Mr. Hilliard's request for verification and correction of the PORTFOLIO entry, and in accordance with its standard procedures, EQUIFAX did not evaluate or consider Mr. Hilliard's information, claims, or evidence, nor did it make any attempt to substantially or reasonably verify PORTFOLIO's representations.

118. This is particularly obvious in that EQUIFAX deleted the GECRB entry, while verifying the PORTFOLIO entry, both of which were entries for the exact same Belk Account.

119. In the alternative to the allegation that EQUIFAX failed to contact PORTFOLIO, it is alleged that EQUIFAX did forward some notice of the dispute to PORTFOLIO and that PORTFOLIO failed to conduct a lawful investigation.

**Renewed Portfolio Collection Activity**

120. At about the same time that he received the credit reporting agencies' responses to his dispute of the Belk Account, Mr. Hilliard also heard from PORTFOLIO.

121. PORTFOLIO and sent a collection letter regarding the Belk account directly to Mr. Hilliard.

122. Both the FDCPA and the PPCA, prohibit collection agencies such as PORTFOLIO from communicating about alleged debts with consumers who have attorney representation with regard to such alleged debts.

123. PORTFOLIO ignored the fact that Mr. Hilliard was still represented by counsel with respect to the Belk Account.

124. PORTFOLIO's collection letter stated that the Belk Account was valid and

that PORTFOLIO "is no longer treating this account as a disputed account and will transfer the account back to the collection floor to pursue collection of the outstanding balance due on this account."

125.    PORTFOLIO did not acknowledge that it had dismissed its lawsuit against Mr. Hilliard over the exact same account with prejudice less than six months before.

126.    The letter from PORTFOLIO further provided contact information for an "assigned representative," the supposed current balance on the account, and information on how to make payment.

127.    The letter also included copies of various purported account statements addressed to "Katie R Hilliard" and "Sylvester Hilliard" at 2505 Albemarle Avenue.

128.    Based on the content of PORTFOLIO's letter, Mr. Hilliard believed that the company was attempting to strongarm him into paying money on the Belk Account.

## Damages

129.    PORTFOLIO's lawsuit was greatly distressing to Mr. Hilliard.

130.    He felt anxiety and fear over what would happen in the lawsuit.

131.    He also felt humiliated that Defendants PORTFOLIO and SESSOMS had soiled his reputation with a false accusation on the public record that he had defaulted on an account.

132.    Because the lawsuit complaint included a purported account statement in his mother's name, he also felt that the lawsuit implied that his deceased mother was a deadbeat who had not paid her bills.

133.    Mr. Hilliard loved his mother and was distressed that that ugly implication

might become the impression left of her in the world.

134.    After PORTFOLIO dismissed the lawsuit, the Defendants' continued wrongful credit reporting of the Belk Account caused emotional distress to Mr. Hilliard.

135.    For example, in February 2013, Mr. Hilliard received notice from one of his creditors, Wells Fargo, that it was drastically reducing his credit line as a result of a review of his EXPERIAN credit report.

136.    According to Wells Fargo, one of its concerns was a "recent delinquency or public record . . . reported to the credit bureau."

137.    Mr. Hilliard did not have any delinquent or public records accounts.

138.    The only credit report entries on his EXPERIAN credit report that he was aware of showing as delinquencies were the credit report entries of Defendants PORTFOLIO and GECRB for the Belk Account.

139.    Additionally, also in February 2013, another creditor, Chase, notified Mr. Hilliard that it was reducing his credit line on one account and closing another account due to information on his EQUIFAX credit report.

140.    According to Chase, one of its concerns was a "delinquency reported in the past 48 months."

141.    To the best of his knowledge, Mr. Hilliard did not have any delinquent accounts.

142.    The only credit report entries on his EQUIFAX credit report that he was aware of showing as delinquencies were the credit report entries of Defendant PORTFOLIO for the Belk Account.

143.     The reduction in one credit line and the loss of a second credit line were emotionally very hard on Mr. Hilliard, who does his best to maintain good credit.

144.     Additionally, Mr. Hilliard also incurred out-of-pocket expenses, including credit monitoring costs, to understand what was going on with the entries on his credit reports.

145.     The internal policies and procedures of the Defendants PORTFOLIO, GECRB, EXPERIAN, EQUIFAX, and TRANS UNION do not appear to place any value on their obligations under FCRA to report credit entries accurately or to reinvestigate carefully when notified by the credit reporting agencies of consumer disputes.

146.     The internal policies and procedures of the Defendants PORTFOLIO and its agent, SESSOMS, do not appear to place any value on their obligations under FDCPA to avoid collection on accounts from persons not liable on those accounts.

147.     The policies and procedures of Defendants as a whole evince willfulness, wantonness, and reckless disregard for the rights and interests of consumers, and led directly to the injuries to Mr. Hilliard described hereinabove.

## CAUSES OF ACTION

### Count One:

### *(As to PORTFOLIO and GECRB)*

### Violations of the Fair Credit Reporting Act ("FCRA")

### 15 U.S.C. §§ 1681 <u>et</u> <u>seq</u>.

148.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

149.    With respect to Plaintiff's credit reports, Defendants PORTFOLIO is a furnisher of credit information within the meaning of 15 U.S.C. § 1681 s-2 et seq.

150.    With respect to Plaintiff's credit reports, Defendant GECRB is also a furnisher of credit information within the meaning of 15 U.S.C. § 1681 s-2 et seq.

151.    Defendants have violated the FCRA at 15 U.S.C. § 1681s-2(b) by actions that include, but are not limited to the following:

   a.   Failing to permanently and lawfully correct their internal records to prevent the reporting and verification of false information to the consumer reporting agencies;

   b.   Failing to investigate fully and properly the credit reporting agencies' notices of Mr. Hilliard's dispute of Defendants' credit reporting of the Belk Account;

   c.   Failing to review all relevant information regarding the Belk Account; and

   d.   Failing to respond accurately to the credit reporting agencies.

152.    Additionally, Defendant PORTFOLIO has violated the FCRA at 15 U.S.C. § 1681b(f) by obtaining and using Plaintiff's consumer credit report without his permission or a permissible purpose that had been certified to the consumer reporting agency.

153.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, actual costs, and emotional distress.

154.    Defendants' conduct, action and inaction in Mr. Hilliard's case was willful,

rendering them liable for actual, statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

155.    In the alternative, Defendants were negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

156.    Plaintiff is entitled to recover costs and attorney's fees from Defendants PORTFOLIO and GECRB in an amount determined by the Court pursuant to 15 U.S.C. § 1681n, or, in the alternative, 15 U.S.C. § 1681o.

## Count Two:

### (As to EXPERIAN, EQUIFAX, and TRANS UNION)

### Violations of the Fair Credit Reporting Act ("FCRA")

### 15 U.S.C. §§ 1681 et seq.

157.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

158.    Defendants EXPERIAN, EQUIFAX, and TRANS UNION have violated the FCRA at 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they publish and maintain concerning the Plaintiff.

159.    Defendants EXPERIAN, EQUIFAX, and TRANS UNION have also violated the FCRA at 15 U.S.C. § 1681i by actions that include, but are not limited to the following:

    a.    Failing to correct or delete inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies;

b. Failing to conduct proper reinvestigations of Plaintiff's disputes;

c. Failing to forward all relevant information to the furnishers;

d. Failing to maintain reasonable procedures for identifying and verifying disputed information in Plaintiff's credit files; and

e. Relying upon verification from a source, PORTFOLIO, that they had reason to know were unreliable based on the public record of lawsuits over PORTFOLIO's incorrect credit reporting with regard to other consumers.

160. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, actual costs, and emotional distress.

161. Defendants' conduct, action and inaction was willful, rendering them liable for actual, statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

162. In the alternative, Defendants were negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

163. The Plaintiff is entitled to recover costs and attorney's fees from Defendants EXPERIAN, EQUIFAX, and TRANS UNION in an amount determined by the Court pursuant to 15 U.S.C. § 1681n, or, in the alternative, 15 U.S.C. § 1681o.

## Count Three:

### (As to PORTFOLIO and SESSOMS)

## Violations of the Fair Debt Collection Practices Act

## 15 U.S.C. §§ 1692, *et. seq.*

164.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

165.     Defendants PORTFOLIO and SESSOMS have violated the Fair Debt Collection Practices Act by actions that include, but are not limited to, the following:

    a.    Defendant PORTFOLIO, in attempting to collect from Plaintiff and filing a lawsuit against Plaintiff over a debt that was not his and that he did not owe, and interest on said debt, has used false, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of the FDCPA at 15 U.S.C. §§ 1692e and e(10); has falsely represented the character and amount of the alleged debt, in violation of the FDCPA at 15 U.S.C. § 1692e(2)(A); has threatened to continue unlawful collection attempts, in violation of the FDCPA at 15 U.S.C. § 1692e(5); has made telephone calls for the purpose of annoying and harassing Plaintiff, in violation of the FDCPA at 15 U.S.C. § 1692d(5); and has engaged in unfair or unconscionable means in attempt to collect a debt, in violation of the FDCPA at 15 U.S.C. § 1692f.

    b.    Defendant PORTFOLIO, in communicating to the credit reporting agencies credit information that it knew or should have known to be false, used a

false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation of the FDCPA at 15 U.S.C. §§ 1692e and e(8).

c.   Defendant PORTFOLIO, in sending a collection letter to Plaintiff in January 2013, at a time when it knew Plaintiff to be represented by an attorney with respect to the Belk Account, made a prohibited communication in connection with debt collection, in violation of the FDCPA at 15 U.S.C. § 1692c(a).

d.   Defendant SESSOMS, in filing a lawsuit to collect from Plaintiff a debt that was not his and that he did not owe, and interest on said debt, has used false, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of the FDCPA at 15 U.S.C. §§ 1692e and e(10); has falsely represented the character and amount of the alleged debt, in violation of the FDCPA at 15 U.S.C. § 1692e(2)(A); and has engaged in unfair or unconscionable means in attempt to collect a debt, in violation of the FDCPA at 15 U.S.C. § 1692f.

166.   As a result of Defendants' actions, Plaintiff has suffered actual damages including emotional distress, anxiety, frustration, and inconvenience in attempting to resolve this matter, has been denied credit, and has had to hire an attorney.

167.   As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) from each of the Defendants

PORTFOLIO and SESSOMS; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## Count Four:

### *(As to PORTFOLIO)*

### Violations of the N.C. Prohibited Practices by Collection Agencies
### N.C.G.S. § 58-70-90, *et seq.*

168.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

169.    At all times relevant, Defendant PORTFOLIO, acting by and through its officers, agents, employees, or assigns, was engaged in commerce in the state of North Carolina.

170.    Defendant has violated the North Carolina's Prohibited Practices by Collection Agencies statute by actions that include, but are not limited to, the following:

a.    Defendant, in attempting to collect from Plaintiff a debt that was not his and that he did not owe, has falsely represented the character, extent, or amount of an alleged debt, in violation of N.C.G.S. § 58-70-110(4);

b.    Defendant, in attempting to collect from Plaintiff a debt that he did not owe, and in communicating with a represented consumer, has engaged in unconscionable means of debt collection, in violation of N.C.G.S. § 58-70-115; and

c.    Defendant, in making to the credit reporting agencies the false accusation that Mr. Hilliard had not paid or had willfully refused to pay a just debt, has

26

attempted to collect an alleged debt by means of unfair threat, coercion, or attempt to coerce, in violation of N.C.G.S. § 58-70-95(3).

171.    Defendant PORTFOLIO's acts are also unfair and deceptive in violation of N.C.G.S. § 75-1.1 in that they offend established public policy, and are immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead.

172.    As a result of Defendant PORTFOLIO's actions, Plaintiff has suffered injury including emotional distress, anxiety, frustration, and inconvenience in attempting to resolve this matter, has been denied credit, and has had to hire an attorney.

173.    As a result of Defendant PORTFOLIO's violations of the PPCA, Plaintiff is entitled to actual damages and to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 pursuant to N.C.G.S. §58-70-130 from Defendant for each violation attributable to Defendant; and, reasonable attorney's fees and costs pursuant to N.C.G.S. §75-16.

174.    Defendant PORTFOLIO is also liable for punitive damages in that it knew or should have known that Plaintiff was not a debtor on the account, and conducted its wrongful behavior described hereinabove willfully, intentionally, maliciously, and with reckless disregard for Plaintiff's rights and interests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SYLVESTER HILLIARD, JR.  prays the Court to:

1.  On Plaintiff's First and Second Causes of Action, find that the conduct, action and inaction of Defendants PORTFOLIO, GECRB, EXPERIAN, EQUIFAX, and

TRANS UNION was willful, rendering them each liable to Plaintiff individually for actual, statutory, and punitive damages in an amount to be determined by the Court pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681n; or, in the alternative, find that said Defendants were negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

2. Award him on his Third Cause of Action actual damages in an amount to be determined at trial and statutory damages of $1,000.00 each from Defendants PORTFOLIO and SESSOMS pursuant to the violations of the Fair Debt Collection Practices Act alleged therein;

3. Award him on his Fourth Cause of Action actual damages and punitive damages in an amount to be determined at trial and $4000 in statutory damages per violation from Defendant PORTFOLIO pursuant to the violations of N.C.G.S. § 58-70-90, et seq. alleged therein;

4. Enter an order requiring the credit reporting agencies to correct or delete any false information furnished regarding the Belk Account and enjoining Defendants from representing to any third party false information regarding said Account;

5. Award him his costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); 15 U.S.C. § 1681n (or, in the alternative, 15 U.S.C. § 1681o); and N.C.G.S. § 75-16.1;

6. Award him pre-judgment and post-judgment interest;

7. Grant trial before a jury on all issues so triable; and

8. Grant such other and further relief as the Court deems just and proper.

THIS the 23d day of April, 2013.

Respectfully submitted by: /s/ Suzanne Begnoche
Suzanne Begnoche, Attorney at Law
Attorney for Plaintiff
NCSB # 35158
312 West Franklin Street
Chapel Hill, NC  27516
Telephone: (919) 960-6108
Facsimile: (919) 500-5289
suzanne.begnoche@begnochelaw.com